UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT         :   April 2, 2012

                             :

COUNTY OF NEW HAVEN          :   New Haven, Connecticut

AFFIDAVIT

Kurt Siuzdak, being duly sworn, deposes and states the following:

**INTRODUCTION**

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been employed in this capacity since 1997. I am currently assigned to the New London Resident Agency and am charged with investigating organized crime, and violent crime and major offenses. My responsibilities include the investigation of violations of Title 18, United States Code, Section 1341 (mail fraud) and Title 18, United States Code, Section 1343 (wire fraud), My experience with the FBI has included investigations of cases concerning organized crime, white collar crime, money laundering, art and antiquities crimes. I have held the supervisory position of Assistant Legal Attaché (ALAT) and was in charge of the FBI's counterintelligence program in the Iraq. In my capacity as a Special Agent and ALAT, I have participated in art crimes investigation, and I have provided foreign governments and the U.S. State Department with guidance concerning cases involving arts and antiquities.

2. During the course of my career, I have received training and gained experience in interview and interrogation techniques, arrest procedures, search warrants applications, the execution

of searches and seizures and various criminal laws and procedures. I have also trained with the FBI's Art Crime Team.

3. Together with other law enforcement officers, I have been conducting an investigation in acts of wire fraud, mail fraud, and money laundering by use of a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, in connection of the sale of original pieces of fine art and original limited edition fine art prints. As such, I have participated fully in this investigation and, as a result, am thoroughly familiar with the information contained herein.

4. I make this affidavit in support of a criminal complaint charging DAVID J. CRESPO (DOB ████ 1954) ("Crespo") with violations of Title 18, United States Code, Section 1341 (Mail Fraud) and Title 18, United States Code, Section 1343 (Wire Fraud). I have participated in the investigation described herein, and have reviewed the reports, both oral and written, of other members of the FBI, cooperating witnesses and law enforcement officials. In addition to these reports, the statements contained in this affidavit are based, in part, on information provided by witnesses as discussed below. Further, on or about November 12, 2010, the FBI executed a federal search warrant authorized by the Honorable Joan Glazer Margolis, United States Magistrate Judge, at the Brandon Gallery, which was then Crespo's place of business, located at 757-759 Boston Post Road, Madison, Connecticut ("Brandon Gallery"). The facts set forth in this affidavit are based on information that I have obtained from my personal involvement in the investigation and from other law enforcement officers who have been involved in this investigation, on a review of documents, on interviews of witnesses and victims, and on my training and experience, and knowledge gained from other search warrants.

5. Where the contents of documents or communications with others are reported herein, they are reported in substance and part. This affidavit is submitted for the limited purpose of establishing probable cause in support of the attached search warrant and, therefore, contains only some of the relevant facts known to me. I have not included each and every fact known to me concerning the individuals and events described herein.

6. I, together with the Madison Police Department, have been investigating allegations that David Crespo, an art dealer who conducted business under the name Brandon Gallery, Metropolitan Art Auctions/Portfolio Reflections of the Masters, in Madison, Connecticut, was defrauding consumers. In connection with that investigation, I have learned that some of the pieces of art have been purchased and sold by Crespo was through accounts established on the Internet auction site eBay. I also have learned that the scheme also involved the use of computers connected to the Internet, as well as the use of telephones to communicate across state lines. The scheme also involved the use of the United States Mail and interstate carriers such as Federal Express ("Fed Ex") and United Parcel Service ("UPS") to ship counterfeit artwork, receipts and false Certificates of Authenticity ("COAs").

7. At all times relevant to the scheme, a market existed for "original pieces of fine art" (hereinafter referred to as original pieces of art) and "original limited edition fine art prints" (hereinafter referred to as limited edition prints). Original artwork are created and signed by well-known artists. The standards and usages of the trade in original artwork is that it is a one-of-a-kind work created directly by the artist. Limited edition prints are prepared under the direct supervision of well-known artists and signed by the artists. The

standards and usages of the trade in limited edition prints require that such prints be prepared from a master impression and/or plates created by the artist, or under his direct supervision. The prints are thereafter to be produced in a quantity determined by the artist, and each print is to be inspected by the artist to ensure that it is of a level of quality consistent with the artist's intentions. Prints approved by the artist are required to be signed by the artist personally, and each print in the sequence which is created for commercial distribution is uniquely labeled with a different number. After production of the predetermined number of prints, the master impression is to be defaced or destroyed so as to ensure that the edition is truly limited.

8. Based on the investigation, I believe that there is probable to believe that Crespo has engaged in a scheme and artifice to defraud customers of the Brandon Gallery and others, and has used the mails and wires in connection with that scheme and artifice..

9. In or about 2005, Crespo purchased what purported to be original pieces of artwork by the renowned artist Pablo Picasso. Crespo purchased the artwork, which was referred to as "the Arruza Collection," over the internet through the use of Ebay from an entity known as "Collectart4less." Crespo paid less than $50,000 to Collectart4less for approximately 21 pieces of purported original Picasso artwork by sending checks to Collectart4less. In late 2005, Crespo and owner of Collectart4less ("HP") engaged in a number of e-mail communications regarding the Arruza collection. In those e-mails, Crespo advised HP that Sotheby's had advised him that the Picassos were not original pieces of art but were reproductions printed on paper. HP responded that the pieces were originals but that he [HP] was not an expert and in a later e-mail stated, "[a]bout your drawings. You know I cannot certify them."

10. In connection with his acquisition of the Arruza Collection Collectart4less" provided a number of documents entitled "Letter[s] of Provenance" signed by HP, which were addressed to the "Bramdon [sic] Gallery" and which purported to describe the history of the artwork.  In addition, HP provided a Letter of Provenance under the letterhead of Collectart4less which was addressed "Dear Ebayer."   At the time, HP was a dealer in art and other collectibles, located in his home in Miami, Florida who conducted his business under the name of Collectart4less.  HP was not a noted art expert, researcher or appraiser, and did not hold a college or advanced degree.

11. On or about September 28, 2008, Crespo sold TS and MS a piece of alleged Picasso artwork from the Arruza Collection, to wit, "La Tauromaqura," as well as another purported piece of original Picasso artwork, "Opium Smoker," for a total of $33,750.  In connection which arranging the purchase and sale of the alleged Picassos, Crespo communicated with TS and MS, who resided in Massachusetts, via the internet.   In or about December 2009, Crespo sold TS and MS an additional piece of alleged art from the Arruza Collection, to wit, "Spirit of the Bullfight," for $10,750.  In connection with the sales, Crespo provided TS and MS with "Certificate[s] of Evaluation" signed by him under the letterhead of "The Brandon Gallery."  Those certificates stated that the artwork was original and had been hand-signed by Pablo Picasso.  The certificates further represented that the artwork had been "[d]ocumented by the noted art expert, researcher, and appraiser, Dr. [HP] of Miami Beach, Florida, and Mexico City, Mexico," and valued "La Tauromaquia" for insurance purposes (and not as an offer to purchases) at $45,950 and "Spirit of the Bullfight" for insurance purposes (and not as an offer to purchase) at $47,950.

12. Thereafter, TS and MS requested detailed letters of provenance regarding the purported Picasso art they had purchased from Crespo. Crespo first responded with a letter send via the United States mails, which represented "Dr. [HP] is at Symposiums out of the U.S." Later, Crespo sent TS and MS a letter which stated: "Here is the cert from Dr. [HP}. Sorry it took so long." Enclosed with that letter were two documents which purported to contain the signature of "Dr. [HP]" under the letterhead of "SYMPOSIUM DIRECTOR, DINE ARTS MIAMI, [HP], 16217 SW 48th Terrace, Miami, FL  33185." In fact, HP did not sign those documents, nor did he have a doctorate or any other advanced degree, was not the Symposium Director of Fine Arts Miami, and did not reside at the address listed on the letterhead. One of the fraudulent letters represented that "Spirit of Bullfight" was a "pen and ink, crayon, and watercolor wash drawing by Picasso .. ." The second document represented that "the Bullfight (La Tauromaquia) . . . is a crayon drawing by Picasso . . ."

13. I have spoken with a noted art expert who is a consultant to the Picasso family. He has examined the "La Tauromaquia" and "Spirit of the Bullfight," which Crespo had sold to TS and MS, as well as other alleged original Picasso artwork sold by Crespo to them, and has advised me that they are not genuine Picasso artwork and are of nominal or frame value.

14. In addition, during the execution of the search warrant at the Brandon Gallery in November 2010, agents recovered a letter dated October 25, 2008 purporting to be from HP to TS and MS, regarding "La Tauromaqui." The letter had a typewritten note to HP asking him to "please make a certificate with your seal and the above information on it and glue the enclose color picture to the certificate." Attached to the letter was a draft unsigned certificate for "La Tauromaqui" referenced in paragraph 12, above, with what appear

contained a number of attempts to practice HP's signature. TS and MS never received the October 25 letter, although he did receive a forged copy of the "provenance" directly from Crespo. In addition, an examination of computers seized from the Brandon Gallery in November 2010, revealed a draft of the October 25 letter created on September 28, 2008, modified on October 3, 2008, and last accessed on November 3, 2010. Another file containing the alleged Provenance from HP "M Crespo\my documents\[HP].doc." reflected a creation date of December 3, 2008, a modified date of February 26, 2010, and last accessed date of September 30, 2010.

15. As noted above, in November 2010, the FBI executed a federal search warrant at the Brandon Gallery and seized a number of items pursuant to that warrant. On February 10, 2011, TS received an e-mail from the Brandon galley e-mail account. In that e-mail, TS a were advised that, among other things, "[f]rom what I have been told, everything they [the FBI] have examined has been genuine and as represented" and indicated that Crespo's attorney would be sending TS an e-mail. In point of fact, Crespo was never advised by the FBI that "everything they have examined has been genuine and as represented."

16. On or about March 8, 2009, ML purchased "The Studio at La Califonie" from Crespo at the Brandon Gallery. ML paid Crespo $35,000 using his American Express card, as well as trading Crespo another piece of artwork valued at $48,000. In a Certificate of Evaluation provided to ML, Crespo via the U.S. mails, Crespo represented that he had obtained the original Picasso artwork hand signed by Picasso "[f]rom the collection of noted appraiser, art expert and Miami Fine Arts Symposium Director Dr. [HP]. . . . " The certificate evaluated the piece for insurance at $114,000. Crespo also provided ML with what purported to be a provenance containing the signature of "Dr. [HP]" under the letterhead of

"SYMPOSIUM DIRECTOR, DINE ARTS MIAMI, [HP], 16217 SW 48th Terrace, Miami, FL 33185." In fact, HP did not hold a doctorate or any other advanced degree, was not the Symposium Director of Fine Arts Miami, did not reside at the address listed on the letterhead, and did not sign the Letter of Provenance.

17. With respect to the purported Arruza collection, in or around 2002, Crespo had solicited JE to become an investor in artwork at the Brandon Gallery. The investment began with JE investing in two purportedly original works by Miro. In or around 2005, Crespo solicited JE to have his investment transferred from the Miro pieces to the Arruza Collection.

18. With respect to the Arruza collections, Crespo fraudulently told him that the Picasso pieces were original works created by Pablo Picasso. Crespo stated to JE that he was obtaining the Arruza Collection by trading 255 pieces of valuable artwork to a Caribbean art dealer and he needed additional money to finalize the purchase of the approximately twenty pieces of art.

19. On or about August 18, 2005, Crespo provided JE with a receipt that stated "Picasso package 5 works on paper from (Aruzza + Ordonez estates) after trade of 255 pcs + 1 Picasso (Le Clown) balance due to acquire all is $26,500- Profits to be split per cost basis. Approximately 2/3 (Gallery) 1/3 [JE]." On or about November 10, 2005, Crespo provided JE with a receipt that stated "Picasso 11 remaining work from the Aruzza/Carpenter collection of unique works. Mr. Crespo here has agreed to sell a percentage share in the collection as closely come to the same ownership as the last agreement."

20. Between June 2005 and November 2005, JE paid $78,000, as well as his investment in the

Miro collection, to Crespo toward the purchase of the Arruza collection believing that he had purchased and owned a one-third interest in the Brandon Gallery's entire Arruza Collection. Between 2005 and 2010, Crespo maintained regular contact with JE in order to deceive JE about the true nature and legitimacy of the investment scheme. In those communications, Crespo regularly discussed with JE Crespo's alleged efforts to sell the pieces of the Arruza Collection to potential buyers. For example, on October 12, 2010, Crespo sent an e-mail to JE which stated that "we can offer most of the works (although we got a package price – some are far superior to others) at from about 45-75K (except two oils) each with a discount for multiple purchaser." However, Crespo never disclosed to JE that the Arruza collection did not contain genuine Picasso art, and Crespo failed to disclose that he had, in fact, sold pieces of art from that collection and did not provided JE with proceeds from those sales.

21. TS and MS, ML and JE, each relied on Crespo's expertise in the area of fine art and statements about the genuine nature of artwork as a basis to make the purchases. Had they known that the art the purchased from Crespo were not originals and has, in fact, been acquired by him from Collectart4less over the internet through Ebay, they would not have purchased the pieces.

22. On November 12, 2010, I interviewed Crespo at the Brandon Gallery. During that interview, he admitted that he owed JE about $100,000 for his investment in the Arruza Collection. Crespo stated that he never told JE that the pieces were not genuine and that JE believed that the artwork was worth about $1,300,000. Crespo also advised me that he "knew it [the Arruza Collection] was fake, I am sorry. I knew it was wrong."

23. Accordingly, on the basis of the foregoing information, there is probable cause to believe,

and I do believe, that David Crespo has engaged in a scheme and artifice to defraud and has used the mails and wires in connection with that scheme and artifice, in violation of Title 18, United States Code, Section 1341 (mail fraud) and Title 18, United States Code, Section 1343 (wire fraud).

_____
Kurt Siuzdak
Special Agent, Federal Bureau of Investigation

Subscribed and sworn to before me
this ___ day of April, 2012

/S/ Joan G. Margolis, U.S.M.J.
_____
JOAN G. MARGOLIS
UNITED STATES MAGISTRATE JUDGE