UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. |
| | : | 3:12-CR-00171 (JCH) |
| v. | : | |
| | : | |
| DAVID J. CRESPO, | : | JULY 1, 2015 |
| Defendant. | : | |

**RULING RE: GOVERNMENT'S AMENDED APPLICATION FOR RESTITUTION**

On September 3, 2013, defendant David J. Crespo ("Crespo") pled guilty to Count Twelve on the Indictment, wire fraud in violation of sections 1341 and 2 of title 18 of the United States Code. On December 16-17, 2014, the court conducted an evidentiary hearing regarding factual issues in dispute relevant to Crespo's sentencing. On January 16, 2015, Crespo was sentenced to 57 months imprisonment, three years supervised release, a special assessment of $100, and restitution in an amount to be determined pursuant to section 3663A of title 18 of the United States Code. Upon the retirement of the sentencing judge, this case was transferred to the undersigned to resolve the issue of restitution and other pending motions.

Currently pending before the court is the government's Amended Application for Restitution (Doc. No. 167). The government requests entry of an order granting restitution to thirteen individuals it has identified as victims pursuant to 18 U.S.C. § 3663A, for a total of $352,831. Crespo, through counsel, has filed an opposition in which he objects to the entry of restitution in total, and also sets forth specific objections as to certain alleged victims. Defendant's Objections to Amended Application for Restitution (Doc. No. 168) ("Def.'s Obj.")

**II. APPLICABLE LAW**

Pursuant to the Mandatory Victims Restitution Act (MVRA), the court must order restitution for victims of certain offenses. 18 U.S.C. § 3663A(a)(1). The MVRA defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme . . . of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme." 18 U.S.C. § 3663A(a)(2). In cases where the offense resulted in loss of property to a victim, the amount of restitution is equal to the greater of the value of the property on the date of loss or the value of the property on the date of sentencing, less the value of any part of the property that is returned. 18 U.S.C. § 366A(b).

The court resolves any dispute as to the proper amount or type of restitution by a preponderance of the evidence. 18 U.S.C. § 3664(e). The government has the burden of demonstrating the amount of loss sustained by a victim as a result of the offense. Id. The MVRA does not require "mathematical precision," but rather "a reasonable approximation of losses supported by a sound methodology." United States v. Gushlak, 728 F.3d 184, 196 (2d Cir. 2013). The preponderance standard "must be applied in a practical, common-sense way. So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution." Id.

**III. DISCUSSION**

    A.    <u>Crespo's General Objection</u>

Crespo objects to the entry of any restitution order on the ground that the

government has not met its burden to show that any of the artwork at issue is fraudulent, and therefore worthless (or at least worth less than its represented value). He argues that none of the pieces were independently appraised, and that none of the Government's witnesses who testified at the evidentiary hearing "were competent to testify as to the value of the purportedly fraudulent artworks." Def.'s Obj. at 6.

Based on the record before the court, and in particular the evidence set forth below, the government has shown, by a preponderance of the evidence, that the "Arruza Collection" paintings, which Crespo represented to be original Picassos, were not original Picassos. Further, the pieces originating from Gallery 25, which Crespo represented to be original Chagall lithographs, were not original Chagall lithographs.

At the sentencing hearing, FBI Agent Kurt Siuzdak testified to expert Emanuel Benador's opinion that pieces of art from the Arruza Collection and Gallery 25 lithographs that he examined – some in person, some via photographs – were fake. Transcript of Sentencing Hearing Vol. I, Dec. 16, 2014 (Doc. No. 159) ("Sent. Hrg. Tr."), at Tr. 90:1-2,14-91:1. Siuzdak also testified that appraisers from Sotheby's, the Shannon Gallery, and Skinner's auction house had reviewed certain pieces from Crespo's gallery and opined that they were fake. Id. at Tr. 90:3-9, 117:18-118:16. Further, he testified that Carlos Arruza's son had advised him that the purported Picassos had never been owned by his family. Id. at Tr. 74:16-75:21. Finally, Siuzdak testified that the version of the offense conduct set forth in the government's sentencing memo – which stated that neither the Picassos nor the Chagalls sold to victims were authentic – was substantially accurate. Id. at Tr. 34:23-35:3.

In addition, the FBI document examiner that reviewed the "Judgment of Chloe"

3

Chagall, which Crespo sold to an undercover agent as an original lithograph, opined that it was in fact a printed reproduction.[1] Government's Sentencing Memorandum (Doc. No. 99) ("Gov't Sent. Mem."), Exh. 21 (Doc. No. 99-1). The government also submitted an FBI 302 Report of Interview with Crespo's expert, Dr. Jay St. Mark, which relayed St. Mark's opinion that pieces he examined, including multiple purported Picassos, Chagall lithographs, and Dali pieces, were not original pieces. Government's Response (Doc. No. 174) ("Gov't Resp.") Exh. 4 (Doc. No. 174-1). Robert Marullo, who purchased what he was told by Crespo was an original lithograph signed by Chagall, Sent. Hrg. Tr. 169:6-7, also testified that he later examined the piece with a magnifying glass and observed dots consistent with it having been printed, rather than produced as an original lithograph. Id. at Tr. 182:8-23.

A 2006 email from Crespo to Hector Pinera, who sold him the Arruza Collection, indicates that Crespo knew the "Picassos" were fake. Gov't Sent. Mem., Exh. 4 (Doc. No. 99-1). False provenances for the Arruza Collection Picassos, purportedly from Hector Pinera, were recovered from Crespo's computer. Id., Exh. 13. In addition, when the FBI searched Crespo's gallery, they recovered practice signatures of Hector Pinera and Marc Chagall. Gov't Resp., Exh. 2 and 3 (Doc. No. 174-1).

Finally, in his November 2010 interview with Agent Siuzdak, Crespo himself admitted that the Arruza Collection and Gallery 25 works were fake. Gov't Resp., Exh. 1 (Doc. No. 174-1); Agent Siuzdak Testimony, Sent. Hng. Tr. 39:5-58:23. At the sentencing hearing, Crespo testified that the circumstances under which these

---

[1] This piece was the subject of Count Twelve, to which Crespo pled guilty.

4

inculpatory statements were made should cause the court to discredit them, in that they were a product of coercion and diabetic shock.  However, the sentencing judge found his testimony on this issue was not credible, and that "much of it, if not all of it, was intended to mislead."[2]  Memorandum of Decision Re: Calculation of Sentence (Doc. No. 136) ("Mem. of Decision") at 4.  At Crespo's change of plea hearing, prior to the entry of his guilty plea, his attorney stated that Crespo admitted his liability pursuant to Count Twelve – the attempted sale of a Gallery 25 lithograph to an undercover officer – and that "he made a false statement, which is the scheme or an action to defraud people . . . he did it knowingly and willfully."  Transcript, Change of Plea, Sept. 3, 2013 (Doc. No. 176) at Tr. 22:5-9.  Crespo then indicated his wish to proceed to a guilty plea and then entered a plea of guilty to Count 12.  Id. at Tr. 23:3

In addition, the sentencing judge already made findings that certain pieces of art were fraudulent.  In particular, the sentencing judge explicitly found that the "Olga" Picasso was fake in connection with her finding of intended loss.  Mem. of Decision at 3.  She characterized the letters of provenance and pieces of art admitted into evidence at the hearing as "fake."  Id. at 2.  Further, she found that Crespo's testimony regarding his statements to Agent Siuzdak that the Gallery 25 Chagalls and the Arruza Collection Picassos were fake – testimony which Crespo now relies on in attempting to discredit those statements to the Agent – was not credible.[3]  Id. at 4.  The court also

---

[2] As stated at oral argument, the court does not intend to re-open any findings already made by the sentencing judge.  The court notes that, while Crespo's statements to the Agent are further evidence in support, they are not essential to its determination that the Arruza Collection and Gallery 25 pieces are fraudulent.

[3] The court notes that, at sentencing, the sentencing judge also adopted the PSR and overruled Crespo's objections to ¶¶ 9, 10, 12, 14, 15, 17, 18, 20, 21, 22, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36,

notes that Crespo's objection to restitution in total is inconsistent with the Judgment entered by the sentencing court, which ordered restitution in an amount to be determined.   Judgment (Doc. No. 132); Amended Judgment (Doc. No. 144); Transcript of Sentencing, Jan. 16, 2015 ("Sent. Tr.") at Tr. 78:7-19.

At oral argument, and in his subsequent memorandum, Crespo argued that allowing victims whose pieces were not already seized by the government to keep the fraudulently purchased artwork in addition to restitution for the full purchase price would result in a windfall to those victims that exceeds their actual loss.   While the court is unconvinced that these pieces have anything other than nominal value, the court agrees that retention of the pieces by some victims in addition to restitution would be improper.   Thus, the court will order those victims who have retained possession of the pieces sold to them by Crespo, for which they seek restitution, to return said pieces to the government for sale. The proceeds from any sale will be used to make restitution for all victims on a pro rata basis.   If any victim wishes to keep a piece in lieu of seeking restitution, the court will consider the restitution award based on that piece to be satisfied.   The government has represented that it does not object to such a procedure.

Crespo also argues that in order to order restitution, the pieces purchased by the victims must be independently appraised, and the appraised valued deducted as an offset from any restitution ordered.   Given that none of the victims seeking restitution

---

37, 38, 40, 41, and 43 of the PSR.   Transcript Sentencing Hearing, Jan. 16, 2015 (Doc. No. 156) ("Sent. Tr.") at Tr. 82:12-22.   However, in her Memorandum of Decision, she later indicated that she had "not considered" certain of Crespo's objections as they did not affect her sentence.   Mem. of Decision at 2.

will retain ownership of the pieces, the court views this argument as moot in terms of calculating an offset to the victim's actual loss.  While the proceeds from the sale of any artwork will be applied to satisfy the restitution order on a pro rata basis, they do not reduce the starting point of any victim's actual loss, which is the purchase price of the fraudulent pieces.

The court understands that Crespo also objects to the sale of pieces through a government sale, on the basis that any sale prices will be lower than the actual market value.  However, the court views this as a separate issue from the issue of the amount of the loss actually suffered by the victims and caused by Crespo's offense; namely, by Crespo's inducing the victims to make purchases in the first instance by falsely representing to them the essential character of what they were buying.  The court notes that the "primary and overarching purpose of the MVRA is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being."  U.S. v. Boccagna, 450 F.3d 107 (2d Cir. 2006) (internal quotations and citation omitted).  Ordering restitution in the amount of the purchase price will make the victims whole, while requiring return of the fraudulent pieces will prevent the possibility of a windfall – that is, restitution in excess of actual loss – for any victim.[4]

---

[4] Nothing in the preceding paragraphs should be understood as a finding that any of the fraudulent pieces has a market value greater than nominal or "frame" value.  Indeed, other than Crespo's own testimony, which was found not credible by the sentencing judge, there is no evidence in the record to support Crespo's allegations that some of the pieces have significant value even if they are not original Picassos or original Chagall lithographs.  Crespo offers no specific evidence of value.
According to the FBI 302 interview report, Crespo's own expert, Dr. Jay St. Mark, opined that pieces he examined – including Robert Marullo's Gallery 25 lithograph and several alleged Picassos – had "frame value" of $50 or $200, or "would be a fine purchase for $25.00 at a tag sale."  Gov't Resp., Exh. 4 (Doc. No. 174-1).

B.  Specific Victims.

1.  Jan Ehrenwerth

Dr. Jan Ehrenwerth ("Ehrenwerth") entered into two separate agreements with Crespo in 2002 and 2003. The first involved an initial investment of $22,000. The second involved an initial investment of $32,500 for two works by Joan Miró. Testimony of Jan Ehrenwerth, Sent. Hng. Tr. 130:4-24, Gov't Resp. In 2005, Ehrenwerth rolled the money from his prior investments, along with an additional $78,000, to invest in the Arruza Collection, for a total of $132,500. Id. at Tr. 134:16-20. Crespo objects, first, to the inclusion of Ehrenwerth in the restitution order on the basis that he invested in the artworks, rather than buying them, and thus "assumed the risk that the artworks he invested in would not be sold at a profit." Def.'s Obj. at 11. This argument is unavailing. Even if Ehrenwerth is characterized as an investor rather than a buyer, the basis for his investment was Crespo's representation to him that he was investing in original Picassos and Chagalls. Thus, Ehrenwerth's actual loss of the amount invested was caused not by a "risk" that he assumed, but by the scheme to defraud set forth in Crespo's offense of conviction, and he is a victim under the MVRA.

Crespo further argues that the two initial investments predate the period set forth in the Indictment, and that there is no evidence that any of the pieces involved in those investments were fake. However, whether the pieces that were the subject of the initial investments were fake is beside the point, because those investments were then reinvested in exchange for a percentage of profits for sales from the Arruza Collection. As stated previously, falsely representing that this later transaction was for authentic Picasso originals was part of Crespo's scheme to defraud. Thus, Ehrenwerth's actual

8

loss includes the value of the investments that, in addition to the $78,000 cash, were exchanged with Crespo for Ehrenwerth's investment in the fraudulent works.[5]

Rather than receive back the value of the Miró investment, Ehrenwerth requests return of the two Miró pieces. Crespo further argues that Ehrenwerth is not entitled to return of the two Mirós because their 2003 agreement, which provided a right for Ehrenwerth to repurchase the Mirós, was rolled into the investment in the Arruza Collection. Def.'s Obj. at 12. The court disagrees. As stated previously, Ehrenwerth's investment in the Arruza Collection was based on Crespo's false representations that the works were authentic original Picassos. Part of the actual loss Ehrenwerth suffered as a result of Crespo's offense was the loss of his Miró investment and its attached rights, including the right to purchase the Mirós for his own collection. Thus, allowing the Mirós to be returned to Ehrenwerth as restitution is appropriate.[6] The court agrees with the government that the amount of restitution otherwise owed should then be reduced by $4,425, representing the 15% over the initial price that Ehrenwerth was required by the agreement to pay in order to purchase the Mirós, and by $1,500, the total money that Ehrenwerth received back from Crespo during the course of their agreement. Gov't Resp. at 17. Thus, Ehrenwerth is entitled to

---

[5] The court further notes that Crespo continued to represent that the Picassos were authentic and valuable originals long after the agreement was entered into, as indicated by an email and recorded phone conversation from 2010. See Gov't Sent. Mem., Exh. 7 (Doc. No. 99-1); Sent. Hng. Exh. 35.

[6] As for Crespo's concern that return of the Mirós provides a windfall to Ehrenwerth, in that the pieces may now be worth more than the purchase price, the court notes that the restitution statute, in cases involving loss of property, first envisions that the defendant "return the property to the owner of the property." 18 U.S.C. § 3663A(b)(1)(A). If return is not possible, the defendant must pay an amount equal to the greater of the value of the property on the date of loss or the value of the property on the date of sentencing. 18 U.S.C. § 3663A(b)(1)(B).

restitution from the defendant in the form of the two Miró pieces and $94,975. This amount represents Ehrenwerth's actual loss caused by Crespo's offense.

    2.    Mark Lewis

Crespo sold to Mark Lewis ("Lewis") a painting he fraudulently represented to be an original Picasso. Lewis paid $35,000 plus another piece of artwork valued at $30,000 for the piece. See Sentencing Hearing, Tr. 281:5-17; Testimony of Mark Lewis, Sent. Hng. Tr. 188:12-189:13; Presentence Report (Doc. No. 106) ("PSR") ¶ 27.[7] The government requests restitution in the amount of $65,000. Aside from his general objection regarding proof of inauthenticity, addressed supra at 3-7, Crespo does not object to the amount requested for Lewis. Lewis is entitled to restitution from the defendant in the amount of $65,000.

    3.    Daniel Beardsley

Crespo sold to Daniel Beardsley ("Beardsley") a painting he fraudulently represented to be an original Picasso. Beardsley paid $35,000 for the piece, and the government requests restitution in the amount of $35,000. Aside from his general objection regarding proof of inauthenticity, addressed supra at 3-7, Crespo does not object to the amount requested for Beardsley. Beardsley is entitled to restitution from the defendant in the amount of $35,000.

    4.    John Johannemann

Crespo sold to John Johannemann ("Johannemann") a piece he fraudulently represented to be an original Picasso. Johannemann paid $6,307 for the piece, PSR ¶

---

[7] Except where indicated, Crespo's PSR objections did not contest the amount paid for the pieces in question, but rather, objected to their characterization as not authentic.

10

30, and the government requests restitution in this amount.   Aside from his general objection regarding proof of inauthenticity, addressed <u>supra</u> at 3-7, Crespo does not object to the amount requested for Johannemann.   Johannemann is entitled to restitution from the defendant in the amount of $6,307.

       5.      Robert Marullo

Crespo sold to Robert Marullo ("Marullo") seven items that he falsely represented to be original Chagall lithographs.   Marullo paid $11,000 for the pieces, PSR ¶ 35, and the government requests restitution in this amount.   Aside from his general objection regarding proof of inauthenticity, addressed <u>supra</u> at 3-7, Crespo does not object to the amount requested for Marullo.[8]   Marullo is entitled to restitution from the defendant in the amount of $11,000.

       6.      Robert Chiappetta

Crespo sold to Robert Chiapetta ("Chiapetta") four items that he falsely represented to be original Chagall lithographs.   Chiapetta paid $8,249 for the pieces, PSR ¶ 36, and the government requests restitution in this amount.   Aside from his general objection regarding proof of inauthenticity, addressed <u>supra</u> at 3-7, Crespo does not object to the amount requested for Chiapetta.   Chiapetta is entitled to restitution from the defendant in the amount of $8,249.

       7.      Thomas Lombardi

Crespo sold to Thomas Lombardi ("Lombardi"), among other pieces, two items

---

[8] The government originally proposed restitution in the amount of $19,200 for Marullo.   In his Response, Crespo stated that aside from his general objection, he did not object to a restitution amount of $11,000, but objected to the additional $8,200.   In its Reply, the government agreed and amended the amount of restitution it is seeking for Marullo to $11,000.

that he falsely represented to be original Chagall lithographs. Chiapetta paid $3,700 for the pieces, and the government requests restitution in this amount. Aside from his general objection regarding proof of inauthenticity, addressed supra at 3-7, Crespo does not object to the amount requested for Lombardi. Lombardi is entitled to restitution from the defendant in the amount of $3,700.

        8.     Michael Board

Crespo sold to Michael Board five purported Picassos and two purported Chagall pieces between June – October 2004 and in September 2009, as set forth in a letter from Board's lawyer, Government's Response ("Resp.") Exh. 6 (Doc. No. 174-1). One of these pieces, entitled the "Artist and the Model" or "Painter and the Model," was consigned back to Crespo for resale, who then sold the piece to Daniel Beardsley and replaced it on the wall of his studio with a framed copy. See Siuzdak Testimony, Sent. Hg. Tr. 79:3-80:6. Board did not receive anything for the sale.

Crespo argues, first, that restitution should be denied because the government has not shown that the artworks detailed in the letter from Board's attorney came from Gallery 25 or Arruza Collection, and none of the artwork has been independently determined to be fake. However, there is evidence in the record that works outside these groupings were falsely represented to be Picasso or Chagall originals. According to the FBI 302 Report of Interview, Crespo's own expert, Dr. Jay St. Mark, examined the "Opium Smoker" piece, which was not from the Arruza collection, and stated that it did not appear to be an authentic original by Pablo Picasso. Rep. Exh. 4 (Doc. No. 174-1) at 1. In addition, the "Olga" piece found by the sentencing judge to be fraudulent was not from the Arruza Collection. The evidence of record, including

the evidence discussed with regard to Crespo's general objection, supra at 3-7, supports the inference – which the court draws – that other purported original Picasso and Chagall pieces sold by Crespo during the same general time period were fraudulent.  Falsely representing these pieces to be original Picasso or Chagall works to buyers was part of the same scheme to defraud.  Thus, restitution is appropriate to those victims that suffered losses caused by Crespo's criminal conduct pursuant to that scheme, including Board.[9]  See United States v. Oladimeji, 463 F.3d 152, 158-59 (2d Cir. 2006); United States v. Kinney, 2015 WL 2263140 at *2 (2d Cir. May 15, 2015) (summary order) ("a defendant convicted of an offense involving a criminal 'scheme' [is] liable for restitution to all persons harmed by his actions pursuant to that scheme, even if those actions were not specifically described in the count of conviction or even in the initial indictment").

Crespo also argues that Board traded the "Painter and the Model" piece that was later sold to Daniel Beardsley back to him, rather than consigning it for sale, and so Board is not entitled to restitution for the piece.  In support, he submits a document entitled "Mike Trade ins" that appears to include the piece.  Defendant's Supplemental Memorandum re: Restitution, Exh. 1 (Doc. No. 181-1).  In response, the government submitted a sworn statement by Board confirming that he never traded in, exchanged, or sold the piece, but rather left it with Crespo to hold onto it in his gallery. Government's Response to Defendant's Supplemental Memorandum Re: Restitution,

---

[9] The court also notes that, during his November 2010 interview with Agent Siuzdak, Crespo admitted to selling Board Chagalls at very low prices, which Board believed were authentic.  Rep. Exh. 1 (Doc. No. 174-1) at 6.

Exh. 1 (Doc. No. 182-1).   Having reviewed both documents, it is unclear what the "Trade-ins" document signifies, and it thus inconclusive as to whether Board retained ownership of the piece.   In light of Board's sworn statement to the contrary, in addition to other evidence of record, see Siuzdak Testimony, Sent. Hg. Tr. 79:3-80:6, the court concludes that Board owned the piece at the time Crespo resold it to Beardsley, and is thus entitled to restitution for his losses in connection with the "Painter and the Model."

Crespo further argues that Board is entitled, at most, to $6,316.67 for the "Painter and the Model."   Having concluded that the restitution order properly includes all three Picassos listed on the invoice in question – which lists a total price of $18,950.00 without breaking down the price by piece – the court need not address this argument.   Having reviewed the evidence of record, primarily the letter and receipts submitted by the government, the court concludes that the restitution sought by the government, $49,935, is an accurate measure of the purchase prices paid by Board for the purported Picasso and Chagalls, and thus of Board's actual loss.   Thus, Board is entitled to restitution from the defendant in the amount of $49,935.

       9.    John Desjardins

Crespo sold to John Desjardins ("Desjardins") four Picasso works as well as one Chagall "Daphnis & Chloe" in exchange for three works by Doug Ault valued at $8000 and an additional $5,995 paid on checks and a credit card, on October 31, 2004.   PSR ¶ 38, Government's Response ("Resp.") Exh. 7 (Doc. No. 174-1).   Desjardins also purchased a signed Chagall lithograph for $850 on April 3, 2005, and invested $3000 on October 21, 2006, for three purported signed Picassos that were to be sold at auction.   Id.   The government requests restitution in a total of $17,845.

Crespo first objects on the basis that the government has not shown that certain works came from the Gallery 25 or Arruza Collection, or have been independently shown to be fake.  For the same reasons discussed, supra, at 12-13, a preponderance of the evidence shows that other purported original Picasso and Chagall pieces sold by Crespo during the same general time period were fraudulent.  Thus, Desjardins is a victim under the MVRA and is entitled to restitution from the defendant.

Crespo also argues that the amount requested by the government improperly includes $5,995.00 for framing.  Based upon its review of the supporting documents submitted by the government, the court concludes that the restitution amount requested does not include the separate charge for framing, but rather represents the actual loss suffered by Desjardins based upon his purchase of fraudulent Picasso/Chagall pieces.[10]  Thus, Desjardins is entitled to restitution from the defendant in the amount of $17,845.

10.    Sherry Hansley

Crespo sold to Sherry Hansley ("Hansley") a hand signed, framed lithograph by Picasso and a hand signed etching by Chagall.  Hansley paid $3,150 for the pieces, PSR ¶ 39, and the government requests restitution in this amount.  Crespo objects on the basis that the government has not shown that either work came from the Gallery 25 or Arruza Collection, or that either work is fake.  For the same reasons discussed, supra, at 12-13, a preponderance of the evidence shows that other purported original

---

[10] Defendant's objection appears based on Desjardin's statements recorded in the FBI 302, and restated in the PSR, that Crespo framed one piece of artwork for him.  The receipts submitted by the government indicate a separate charge of $238.77 for framing on April 3, 2005; however, this charge was not included in the requested restitution amount.

Picasso and Chagall pieces sold by Crespo during the same general time period were fraudulent. Thus, Hansley is a victim under the MVRA and is entitled to restitution from the defendant in the amount of $3,150.

      11.     Edwin Elliot

Crespo sold to Edwin Elliot ("Elliot") items that he represented to be authentic hand-signed Picassos and Chagalls. PSR Second Addendum. Elliot paid a total of $4,195 for the pieces, and the government requests restitution in this amount. Crespo objects on the basis that the government has not shown that either work came from the Gallery 25 or Arruza Collection, or that either work is fake. For the same reasons discussed, supra, at 12-13, a preponderance of the evidence shows that other purported original Picasso and Chagall pieces sold by Crespo during the same general time period were fraudulent. Thus, Elliot is a victim under the MVRA and is entitled to restitution from the defendant in the amount of $4,195.

      12.     Richard Friswell

Crespo sold to Richard Friswell ("Friswell") nine Picassos and seven Chagalls between 2005 and 2007. PSR Second Addendum. Friswell paid a total of $36,950 for the pieces, id., and the government requests restitution in this amount. Crespo does not dispute the amount expended, but objects on the basis that the government has not shown that either work came from the Gallery 25 or Arruza Collection, or that either work is fake. For the same reasons discussed, supra, at 12-13, a preponderance of the evidence shows that other purported original Picasso and Chagall pieces sold by Crespo during the same general time period were fraudulent. Thus, Friswell is a victim under the MVRA.

At oral argument, Crespo, through counsel, alleged that Friswell had since sold some of the pieces, and that any amount received in connection with those sales should be deducted from any restitution. Following the hearing, the government submitted a supplemental brief including a confirmation from Friswell that "the works purchased from Brandon Gallery are in my possession." Supplement to Oral Argument (Doc. No. 180) at 1. Based on this representation, no offset to restitution is required. Thus, Friswell is entitled to restitution from the defendant in the amount of $36,950.

      13.    Seymour Mazidis

In its Supplement to Oral Argument (Doc. No. 180), the government withdrew its application for restitution on behalf of Mazidis.

## IV.   CONCLUSION

The government's Amended Application for Restitution (Doc. No. 167) is **GRANTED** to the extent set forth above. A separate Restitution Order will issue.

**SO ORDERED.**

Dated this 1st day of July, 2015 at New Haven, Connecticut.

                                                      /s/ Janet C. Hall
                                                    Janet C. Hall
                                                    United States District Judge