UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID J. CRESPO, | : | |
|     Petitioner, | : | CIVIL CASE NO. |
| | : | 3:17-CV-00713 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | APRIL 19, 2018 |
|     Respondent. | : | |
| | : | |

**RULING RE: AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (DOC. NO. 15)**

**I. INTRODUCTION**

The petitioner, David J. Crespo ("Crespo"), filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to section 2255 of title 28 of the United States Code on April 28, 2017. See Motion to Vacate, Set Aside or Correct Sentence ("Mot. to Vacate") (Doc. No. 1). Subsequently, this court appointed counsel to represent Crespo on May 11, 2017. (Doc. No. 8). On August 7, 2017, counsel for Crespo filed an Amended Motion to Vacate, Correct or Set Aside Sentence ("Am. Mot. to Vacate") (Doc. No. 15), which is currently pending before this court.

Crespo argues that his trial counsel was ineffective for permitting the government to interview the defense's expert witness, Dr. Jay St. Mark, the day before Crespo's sentencing without Crespo's permission to waive the attorney-client privilege. See generally Am. Mot. to Vacate at 11–18. He also argues that his trial counsel was ineffective for failing to cross-examine a government witness, Mark Lewis, at the sentencing hearing about an inconsistency in his statements regarding the price of a painting that the sentencing court relied on in determining intended loss. See generally id. at 19–28. The respondent, the United States ("the government"), opposes Crespo's

1

Motion.  See Government's Response to Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Gov't's Resp.") (Doc. No. 19).

For the reasons set forth below, Crespo's Amended Motion to Vacate is **DENIED**.

## II. BACKGROUND

On April 3, 2012, Crespo was arrested on a complaint charging him with mail fraud, in violation of section 1341 of title 18 of the United States Code, and wire fraud, in violation of section 1343 of title 18 of the United States Code, involving the sale of fake Chagall and Picasso artwork.  Crespo Criminal Docket, Complaint (Doc. No. 1).  Attorney Richard Marquette, who had previously represented Crespo on a retained basis, was appointed to represent Crespo.  (Doc. No. 11).  On August 8, 2012, a grand jury indicted Crespo on nine counts of wire fraud and three counts of mail fraud.  (Doc. No. 15).  On September 3, 2013, Crespo pled guilty before Judge Ellen B. Burns to Count Twelve of the Indictment, which charged him with the sale of a purported Chagall lithograph.  (Doc. No. 60).

On June 5, 2014, the final Presentence Report was filed.  Crespo Criminal Docket, PSR (Doc. No. 83).  On September 9, 2014, Crespo and Attorney Marquette filed a letter objecting to nearly all of the offense conduct detailed in the Presentence Report.  (Doc. No. 198-1).  In order to resolve Crespo's objections, on December 16 and 17, 2014, Judge Burns held a hearing at which the government called the case agent, three victims, and a second FBI agent who was present for an interview of Crespo.  Joint Appendix ("JA") at 214–613.[1]  Crespo called his treating physician and

---

[1] The government filed a copy of the three-volume Joint Appendix in Crespo's appeal as an exhibit to its Response.  (Doc. No. 19-1).

testified himself.  Id.

On January 16, 2015, Judge Burns sentenced Crespo to 57 months of incarceration, followed by three years of supervised release.  Crespo Criminal Docket, Minute Entry (Doc. No. 131).  Judge Burns also ordered restitution, which would be determined at a later date.  Id.  Judgment was entered on January 30, 2015 (Doc. No. 132)), and Crespo filed a notice of appeal on the same day (Doc. No. 134).  On February 5, 2015, Judge Burns issued a memorandum describing how she had calculated Crespo's guidelines range.  JA 734–38.  Subsequently, Attorney Marquette withdrew as Crespo's counsel and was replaced by Assistant Federal Defender David Keenan, who represented Crespo at the restitution proceedings and on appeal.

On July 1, 2015, having been transferred the case after Judge Burns's retirement, the undersigned ordered Crespo to pay $336,306 in restitution to 12 victims.  JA 870–73.  Crespo filed a Notice of Appeal challenging the Restitution Order on July 6, 2015.  Crespo Criminal Docket, Notice of Appeal (Doc. No. 187).

On June 1, 2016, the Second Circuit affirmed Crespo's conviction and sentence.  United States v. Crespo, 651 Fed. App'x 10 (2d Cir. 2016).  The court rejected Crespo's claims that the district court erred in accepting his guilty plea and that the district court erred substantively and procedurally in imposing his sentence.  See id.  The court declined to resolve Crespo's claim as to ineffectiveness of counsel based on the government's interview of Dr. Jay St. Mark, the defense expert Crespo had retained to assist in his defense at his sentencing.  See id. at 15.

## III. LEGAL STANDARD

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted). Section 2255 of title 28 of the United States Code permits a federal prisoner to move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a) (2016). Therefore, relief is available "under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

The petitioner bears the burden of proving he is entitled to relief by a preponderance of the evidence. See Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011). In deciding a section 2255 motion, the court must hold a hearing, "unless the motion and the files and records of the case conclusively show that the plaintiff is entitled to no relief." 28 U.S.C. § 2255(b). However, a petitioner is not automatically entitled to a hearing, and no hearing is required where a petitioner's "allegations are 'vague, conclusory, or palpably incredible.'" Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). To determine whether a prisoner is entitled to an evidentiary hearing on

4

the motion, the court looks "primarily to the affidavit or other evidence proffered in support of the application in order to determine whether, if the evidence should be offered at a hearing, it would be admissible proof entitling the petitioner to relief." LoCascio v. United States, 395 F.3d 51, 57 (2d Cir.2005) (quoting Dalli v. United States, 491 F.2d 758, 760 (2d Cir.1974)). "The petitioner must set forth specific facts which he is in a position to establish by competent evidence." Id. (quoting Dalli, 491 F.2d at 761).

**IV. DISCUSSION**

    A.    <u>Ineffective Assistance of Counsel</u>

        1. Legal Standard

A petitioner claiming ineffective assistance of counsel must satisfy a two-prong test under Strickland v. Washington, 466 U.S. 668, 687–88 (1984). First, he must demonstrate that his counsel's performance "fell below an objective standard of reasonableness." Id. at 688; see also United States v. Abad, 514 F.3d 271, 275 (2d Cir. 2008). Second, he must show that he was actually prejudiced as a result of counsel's deficient performance. See Strickland, 466 U.S. at 687, 692; see also Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012).

Under the first prong, the petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); see also Gjuraj v. United States, No. 3:12-CV-1686, 2013 WL 3540986, at *4 (D. Conn. July 10, 2013). The Second Circuit has described the petitioner's burden as "a heavy one because, at the first step of the analysis, [a court] 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Harrington, 689 F.3d at 129 (quoting Raysor v. United States,

5

647 F.3d 491, 495 (2d Cir. 2011)). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." Kimmelman, 477 U.S. at 381.

Under the second prong, to show prejudice, a petitioner must establish "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). Strickland defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. As such, prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

### 2. Permitting the FBI to Interview the Defense's Expert

Crespo argues that his trial counsel was ineffective for allowing the prosecutor and FBI agents to observe St. Mark's evaluation of artwork and engage in discussions between St. Mark and trial counsel, and then permitting the FBI agent to interview St. Mark on the telephone about his opinion of the artworks' authenticity. See Am. Mot. to Vacate at 12. Crespo argues that there was no conceivable trial strategy that would justify trial counsel's actions, which also violated the attorney-client privilege, and that the government's use of St. Mark's opinion prejudiced Crespo by undermining his efforts to demonstrate the appropriate loss figure and damaging his credibility. See id. at 12–13. The government argues that the attorney-client privilege was not violated because there was no indication that St. Mark possessed confidential information about Crespo or that the discussions with the government implicated confidential information.

6

See Gov't's Resp. at 24. The government also argues that Crespo waived any attorney-client privilege by making assertions about what St. Mark would have testified to had he been present at the sentencing hearing. See id. at 25–26. Moreover, the government argues that Crespo did not suffer any prejudice because nothing in the record indicates that the government's mention of St. Mark affected Judge Burns' sentence. See id. at 26–28.

The court need not reach the question of whether it was unreasonable for trial counsel to allow St. Mark to discuss his opinion of the artwork with the government in advance of the sentencing because Crespo has failed to raise a colorable argument that he was prejudiced by his attorney's conduct. First, it is clear that no reasonable probability exists that the government's reference to St. Mark's opinion of the artwork's authenticity altered the outcome of the sentencing. The government's only mention of its interaction with St. Mark came in response to Crespo's assertion—unprompted by any comment by the government—that St. Mark would have testified that "these works are authentic and a hundred percent genuine" if he were not "very, very ill" to the degree that "he could have possibly passed away." JA 662, 667. In response to Crespo's reference to St. Mark, the government stated that, based on St. Mark's visit to the FBI offices to view the artwork the previous day, St. Mark was not in fact deathly ill. JA 691. The government also commented that, "I don't believe that Mr. Crespo's statements about what Mr. St. Mark said are accurate, based on my discussions when I was sitting there with Mr. Marquette and Mr. St. Mark reviewing [the artwork], and I don't believe

7

those are accurate statements, and it puts, obviously, Mr. Marquette in a very uncomfortable position." JA 691.[2]

Amidst the extensive evidence before the court on the authenticity of the artwork, the government's general allusion to St. Mark's opinion, made in an effort to correct what it perceived to be an attempt by Crespo to mislead the court, clearly did not influence Crespo's sentence. Judge Burns heard testimony from Crespo, two FBI agents who worked on the case, three individuals who either purchased artwork from Crespo or invested money with him to buy and sell art, and Crespo's personal treating physician. JA 734–35. The case agent testified to the opinion of a government expert, Emanuel Benador, that pieces of art he examined were fake. JA 855. He also testified that appraisers from Sotheby's, the Shannon Gallery, and Skinner's auction had reviewed pieces of art from Crespo's gallery and determined that they were fake. See id. In addition, the case agent testified that the son of Carlos Arruza, the purported owner of the collection of Picasso artwork that Crespo sold, had advised the case agent that the supposed Picassos had never been owned by the family. See id. Judge Burns also admitted into evidence "documents, including fake letters of provenance forged by Crespo, and various pieces of fake art that Crespo had sold or had attempted to sell." JA 735 (Memorandum of Decision Re: Calculation of Sentence Imposed). In view of the overwhelming evidence establishing that the artwork was fake and the insubstantiality of the government's reference to St. Mark's opinion, the court concludes that Crespo's allegations are insufficient to establish prejudice.

---

[2] Attorney Marquette did not address St. Mark's health or opinion of the artwork at the sentencing hearing.

8

Crespo also argues that the government was able to use St. Mark's opinion to "bootstrap the findings of its own expert." Am. Mot. to Vacate at 15. However, the government's discussion of St. Mark's opinion to which Crespo refers was contained in the Government's Response to Defendant's Objection to Restitution. JA 796–97. The government's brief came after Crespo's sentencing pursuant to the Judgment, which ordered restitution in an amount to be determined. Crespo Criminal Docket, Judgment (Doc. No. 132). A government brief filed after Crespo's sentencing cannot have prejudiced Crespo at his sentencing.

Finally, Crespo argues that the interaction trial counsel permitted to occur between St. Mark and the government prejudiced him because it allowed the government to contradict his assertions regarding St. Mark's health and supposed findings, undermining his credibility. See Am. Mot. to Vacate at 13–16. However, in view of other statements Crespo made that severely compromised his credibility, there is no indication that the sentence Judge Burns imposed was influenced by any effect the government's statement regarding St. Marks may have had on Crespo's credibility. First, Crespo testified at length at his sentencing that the artwork was genuine and that he had not engaged in any misconduct. JA 648–75, 702–15. Given that Judge Burns accepted Crespo's guilty plea and found that there was a proper basis to continue to attach culpability, JA 715, 736, Crespo's denial that he had engaged in any misconduct necessarily diminished his credibility before the court. Second, Judge Burns applied a two-point enhancement for obstruction of justice pursuant to section 3C1.1 of the United States Sentencing Guidelines. JA 719, 737. Judge Burns found that "Crespo provided materially false information at the evidentiary hearing with respect to, inter alia, the

circumstances under which he made certain inculpatory statements to Agent Suizdak on November 10, 2012, during a search of his then-place of business, The Brandon Gallery." JA 737. That Judge Burns viewed Crespo's misstatements as sufficiently serious to warrant an enhancement for obstruction of justice demonstrates that Crespo's credibility had been compromised for reasons apart from his and the government's statements regarding St. Mark. Thus, Judge Burns had sufficient bases to doubt Crespo's credibility that, even had trial counsel's actions caused Crespo to lose credibility before the court, any damage to Crespo was insignificant when considered alongside the grounds on which Judge Burns had already found Crespo to be dishonest—his denial of the very fraud for which he was being sentenced and misstatements rising to the level of obstruction of justice.[3]

Therefore, even assuming that trial counsel's conduct in allowing the government to interview St. Mark was unreasonable, the court concludes that Crespo has failed to meet the prejudice prong of Strickland. Crespo's claim for relief on his first claim of ineffective assistance of counsel is denied.

---

[3] For the purpose of deciding Crespo's Motion, the court assumes the truth of his explanation for his misunderstanding regarding St. Mark's health. At the sentencing hearing, Crespo stated that "it was Attorney Marquette who told me [St. Mark] was in very dire straits medically. . . . Attorney Marquette said he tried to meet with him on a couple of occasions and he was sick. He's on kidney dialysis. I didn't make that up. That's what Attorney Marquette told me." JA 708–09. Attorney Marquette did not address Crespo's reference to conversations between him and Crespo regarding St. Mark's health during Crespo's sentencing.

In the event that Crespo's statement about his conversation with Attorney Marquette was inaccurate and Attorney Marquette had not in fact misled him about St. Mark's health, then any prejudice to Crespo stemmed from his own dishonesty to the court and his claim of ineffectiveness of counsel fails as a matter of law. See Conn. R. of Prof'l Conduct 3.3(a)(1)–(2), (b) (stating that a lawyer shall not make a false statement of fact to a court and must, if necessary, disclose that evidence offered by his client is false); see also Nix v. Whiteside, 475 U.S. 157, 168–69, 175 (1986) (holding that petitioner could not establish prejudice under the second prong of Strickland resulting from his counsel's refusal to cooperate with him in presenting perjured testimony at trial).

### 3. Failing to Cross-Examine Government Witness Mark Lewis

Crespo argues that trial counsel was ineffective for failing to cross-examine a government witness, Mark Lewis, about a purported inconsistency between his testimony that Crespo wanted to sell a Picasso painting to him for $725,000 and an interview with the FBI in which he stated that the piece had a "price tag of approximately $300,000." Am. Mot. to Vacate, Ex. 1 at 3. Crespo argues that trial counsel's ineffectiveness prejudiced him because, had trial counsel used the FBI report to impeach Lewis's testimony about the sale price of the Picasso painting, "Olga" or "Portrait of a Woman," the court's finding of intended loss would have been reduced from $725,000 to $300,000. See Am. Mot. to Vacate at 23.[4] The court arrived at a guidelines range of 46 to 57 months by adding 14 points to Crespo's base offense level due to its finding that the intended loss was greater than $400,000 but less than $1,000,000. JA 735–36. The court sentenced Crespo to 57 months—the top of the recommended range. JA 737. Crespo argues that, had trial counsel used the FBI report to convince the court that the intended loss was $300,000, the court would have added only 12 points, resulting in a guidelines range of 37 to 46 months. See Am. Mot. to Vacate at 23. Crespo argues that it is reasonably probably that the court would have then sentenced Crespo to only 46 months—the top of the reduced recommended range—changing the outcome of the proceeding. See id. at 23–24.

The government argues that trial counsel was not ineffective for declining to probe into the price of the Olga in light of the fact that Crespo had admitted multiple

---

[4] While the FBI report does not specify the identity of the painting Lewis stated was listed for approximately $300,000, the government does not dispute that Lewis was referring to the Olga. See Gov't's Resp. at 29–30.

11

times that he had advertised the painting for $725,000.  See Govt's Resp. at 30.  The government argues that trial counsel might have made the strategic decision not to question Lewis using the FBI report given the other evidence that the painting had been listed at $725,000 and to focus on other issues instead.  See id.  The government also argues that there was no prejudice because the evidence that Crespo had advertised the Olga for $725,000 was undisputed.  See id. at 31.  Finally, the government argues that, given that this court determined that the actual loss was $336,306 in its Restitution Order, the intended loss for the Olga need only have been an amount greater than $63,694 for the combined intended and actual loss to exceed $400,000.  See id.

       The court does not reach the question of whether it was unreasonable for trial counsel not to cross-examine Lewis using the FBI report because Crespo has failed to adequately allege that he was prejudiced by his attorney's conduct.  First, there is not a reasonable probability that cross-examination of Lewis using the FBI report would have caused the court to decrease the intended loss from "at or just below $725K" to an amount below $400,000.  JA 736.  Crespo himself had testified that the sticker price on the Olga was $725,000.  JA 533, 535.  Second, in the Restitution Order, based on submissions by Crespo and the government, oral argument, and a thorough review of the record, this court determined that Crespo caused an actual loss of $336,306.  JA 870.  Given that the difference between $336,306 and an amount above $400,000 is only $63,695, a finding that Crespo intended to sell the Olga for $300,000 would still result in an intended loss of greater than $400,000 and place Crespo in the same guidelines range.  See United States v. Carboni, 204 F.3d 39, 47 (2d Cir. 2000)

("Logically, intended loss must include both the amount the victim actually lost and any additional amount that the perpetrator intended the victim to lose.")

Thus, the court concludes that Crespo has not met the prejudice prong of Strickland as to his second claim of ineffective assistance of counsel. Crespo's claim for relief on his second claim of ineffective assistance of counsel is denied.

## V. CONCLUSION

Crespo has failed to plead a plausible claim of ineffective assistance of counsel. See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). In addition, there are no material facts in dispute: taking all of Crespo's factual assertions as true, Crespo's claims still fail. See Gonzalez, 722 F.3d at 131. For these reasons, the court exercises its discretion to **DENY** Crespo's request for a hearing.

Furthermore, for the reasons articulated above, the court **DENIES** Crespo's Amended Motion to Vacate, Correct or Set Aside Sentence (Doc. No. 15).

Finally, because the petitioner has not made a "substantial showing" of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

Dated at New Haven, Connecticut this 19th day of April, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge